**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
_____

TAYE M. BROWN, 09-B-1183,

               **Petitioner,**

    -vs-

        **No. 17-CV-213(LJV)(HKS)**
        **Decision and Order**
        **Report and Recommendation**

M. SHEEHAN,

               **Respondent.**

_____


### <u>ORDER AND REPORT AND RECOMMENDATION</u>

       This case was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1) for all pre-trial matters and to hear and report upon dispositive motions.  (Dkt. #18)


       Petitioner Taye M. Brown ("Petitioner"), an inmate of the New York State Department of Corrections and Community Supervision, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging the constitutionality of his conviction in Monroe County Court of Assault in the First Degree (N.Y. Penal L. § 120.10[1]). (Dkt. #1) Petitioner also requests to expand the record to include his former attorney's medical records and death certificate; records from a private investigator hired to assist in his defense at trial; and evidence of his former attorney's suspension from the practice of law.  (Dkt. #10)

Opposing the petition, Respondent filed a memorandum of law, the state court record ("SR."), and the trial and sentencing transcripts ("TT." and "ST.", respectively). (Dkt. #6) Petitioner has filed a reply memorandum. (Dkt. #14)

For the reasons that follow, Petitioner's motion for discovery/to expand the record is denied. Further, it is recommended that the § 2254 petition be denied.

## Factual Background and Procedural History

Petitioner's conviction stems from events occurring on the afternoon of July 23, 2008, during which Petitioner fired a rifle into a group of adults and children gathered on a front porch in Rochester, New York. The shooting resulted in one woman being severely wounded in the back and hand.

A Monroe County grand jury charged Petitioner with Assault in the First Degree (N.Y. Penal L. § 120.10[1]), and on February 13, 2009, a petit jury sitting before the Honorable Alex R. Renzi in Monroe County Court convicted him of the same charge. On March 11, 2009, Judge Renzi imposed a determinate sentence of 16 years of incarceration with five years of post-release supervision. On February 13, 2015, a unanimous panel of the Appellate Division affirmed the judgment of conviction, and on April 4, 2016, the Court of Appeals denied leave to appeal. *People v. Brown*, 125 A.D.3d 1550 (4th Dep't 2015), *lv. denied*, 27 N.Y.3d 993 (2016).

On October 9, 2012, petitioner filed a *pro se* motion for post-conviction relief pursuant to N.Y. Crim. Proc. L. § 440.10 in Monroe County Court. SR. 001-002. On June 13, 2013, Honorable Vincent M. DiNolfo denied the motion in a written opinion. SR. 087-90. Petitioner did not seek leave to appeal that decision to the Appellate Division.

Petitioner filed the instant petition for a writ of habeas corpus in this Court raising four claims for relief: (1) "denial of effective assistance of counsel" because his trial attorney "was suffering from a serious illness which . . . caused him to mix up dates and times;" (2) a witness' "viewing of two arrays containing [his] enlarged photo" constituted "unduly suggestive identification procedures;" (3) the trial court "fail[ed] to follow the statutorily-mandated procedure when it responded to the jury's note;" and (4) "defective grand jury proceedings violated due process[.]" (Dkt. #1 at 6-7)

## Discussion

### I.    General Legal Principles

####    A.    Standard of Review

A district court shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a).  Errors of state law are thus not subject to federal habeas review.  *E.g., Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the

province of a federal habeas court to reexamine state-court determinations on state-law questions.").

Federal habeas review of state court decisions is governed by the standard set forth in the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2241 *et seq.*, which provides that "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim:  (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(1), (2).

A state court decision is "contrary to" established federal law if the state court arrives at a conclusion on a question of law that is opposite to that reached by the Supreme Court, or if the state court adjudicates essentially the same facts as a prior Supreme Court case but reaches an opposite result. *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000) (citations omitted).  A state court decision is an "unreasonable application" of established federal law if (1) the state court correctly identifies the relevant legal principle but unreasonably applies it to a set of facts; (2) the state court unreasonably extends an existing principle to a new context where it should not apply;

4

or (3) the state court refuses to extend an existing principle to a context where it should be extended. *Williams*, 529 U.S. at 407. Any factual determination made by the state court must be presumed correct unless the habeas petitioner can rebut that presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

## II.    Motion for Discovery

Petitioner requests the medical records and death certificate of his defense counsel, George W. Conaty, Jr., to establish that his health issues at the time of Petitioner's trial rendered his representation constitutionally ineffective. (Dkt. #10 at 1)[1] Petitioner also seeks the records of an unnamed private investigator hired to assist in the defense case, who he claims, "never investigated anything." (*Id*.) Finally, Petitioner wishes to present to the Court that Mr. Conaty was suspended from practicing law twice for tax evasion. (*Id*.)

"A habeas petition, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997). However, pursuant to Rule 6(a) of the Federal Habeas Corpus Rules ("Rule 6(a)"), a court has discretion to authorize, upon a showing of good cause, discovery in a § 2254 proceeding. Good cause is demonstrated where the petitioner advances "specific allegations before the court [to] show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is entitled to relief . . . ." *Bracy*, 520 U.S. at 909 (internal quotation marks omitted). Generalized statements

---

[1] Mr. Conaty died on June 22, 2009, according to a handwritten note from counsel's former office. (Dkt. #6-2 at 22)

about the possible existence of discovery material are insufficient to establish the requisite "good cause." *Green v. Artuz*, 990 F.Supp. 267, 271 (S.D.N.Y. 1998). Moreover, "[t]he Court may, in its discretion, deny discovery where the petitioner provides no specific evidence that the requested discovery would support his habeas corpus petition." *Hirschfeld v. Comm'r of the Div. of Parole*, 215 F.R.D. 464, 465 (S.D.N.Y. 2003) (citation omitted).

Here, Petitioner's motion seeks irrelevant information, and, additionally, contains "no specific evidence that the requested discovery would support his habeas corpus petition." *Hirschfeld*, 215 F.R.D. at 465.

With respect to his requests for the records of the private investigator and defense counsel's supposed sanctions for tax evasion, Petitioner's conclusory allegations fail to show that further discovery would entitle him to relief on his ineffective assistance of counsel claim. *See Ruine v. Walsh*, No. 00 CIV. 3798, 2005 WL 1668855, at *6 (S.D.N.Y. July 14, 2005) ("Rule 6 does not license a petitioner to engage in a 'fishing expedition' by seeking documents 'merely to determine whether the requested items contain any grounds that might support his petition, and not because the documents actually advance his claims of error.'") (quoting *Charles v. Artuz*, 21 F.Supp.2d 168, 169 (E.D.N.Y. 1998)); *see also Mills v. Lempke*, No. 11-CV-0440, 2012 WL 1574749, at *6 (W.D.N.Y. May 3, 2012) (holding that when a petitioner provides "overbroad and irrelevant . . . demands" which are "based on speculation and surmise," no good cause exists to support a motion for discovery); *Lewis v. Bennett*, No. 01-CV-

7193, 2002 WL 1300052, at *1 (S.D.N.Y. June 12, 2002) (holding that a petitioner fails to establish good cause where he seeks irrelevant information).

As to his requests for Mr. Conaty's medical records and death certificate, Petitioner contends that counsel's illness affected his "mental health ability," causing him to "forget times, dates, and witnesses' names" at trial. (Dkt. #10 at 1) Under *Strickland v. Washington*, 466 U.S. 668 (1984), to demonstrate ineffective assistance of counsel, a petitioner must show (1) "that counsel's representation fell below an objective standard of reasonableness . . .  under prevailing professional norms," *id.* at 688, and (2) that he was prejudiced by his attorney's errors, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 693–94. Petitioner has failed to demonstrate how the sought-after records would establish either of these requirements.

Petitioner refers to multiple instances of counsel's alleged ineffectiveness in his state court filings. SR. 005-010. Those instances appear in the present record and are reviewable under the *Strickland* standard subject to AEDPA deference. However, Petitioner has not explained how Conaty's medical records and death certificate would establish that these errors fell below an objective standard of reasonableness or how the outcome of the proceeding would have been different. As such, he has not demonstrated good cause for the discovery of counsel's medical records and death certificate.  *See, e.g., Mazer v. United States*, No. 11 CRIM. 121, 2018 WL 7080450, at *5 (S.D.N.Y. Dec. 20, 2018) ("Petitioner has not shown good cause for discovery

relating to [counsel's] alleged mental impairment, because the facts that he seeks to develop would not enable him to demonstrate that he is entitled to relief on any relevant aspect of his ineffective assistance claim.") (internal quotation omitted). Moreover, as discussed in further detail below, *see* Discussion § III.A., Petitioner fails to show that he was prejudiced by Conaty's representation.

In sum, Petitioner's motion for discovery is not supported by good cause and is denied.

### III.    Petitioner's Grounds for Relief

### A.    Ineffective Assistance of Counsel

Petitioner first claims that his trial counsel, George W. Conaty, Jr., was ineffective because he was suffering from esophageal cancer, causing him to "mix up dates and times." (Dkt. #1 at 6) Respondent contends that the claim is procedurally defaulted, and in any event, without merit. (Dkt. #6 at 13) The Court agrees that, although unexhausted and procedurally barred,[2] Petitioner's claim fails on the merits and should be dismissed. *See Lambrix v. Singletary*, 520 U.S. 518, 523 (1997) (stating that bypassing procedural questions to reach the merits of a habeas petition is justified "if the [underlying issues] are easily resolvable against the habeas petitioner, whereas the procedural bar issue involved complicated issues of state law"); *accord, Boddie v. NYS Div. of Parole*, 288 F.Supp.2d 431, 439 (S.D.N.Y. 2003) ("[P]otentially complex

---

[2] Petitioner did not seek leave to appeal the state court's decision of his § 440.10 motion. *See Safran v. Dep't of Corr. & Cmty. Supervision*, 12-CV-4160, 2014 WL 1757516 (E.D.N.Y. Apr. 30, 2014) (failing to seek leave to appeal the denial of a Section 440 motion renders claim unexhausted.).

and difficult issues about the various obstacles to reaching the merits [of a habeas petition] should not be allowed to obscure the fact that the underlying claims are totally without merit.") (quotation omitted); *Anderson v. Graham*, No. 15-CV-06687, 2018 WL 1428249, at *2 (W.D.N.Y. Mar. 22, 2018) ("the Court declines to resolve the issues raised by Respondent's assertion of the defenses of non-exhaustion and procedural default, and instead proceeds directly to consideration of the merits of Petitioner's claims.").

Petitioner raised this claim in his state § 440.10 motion. That court found Petitioner's allegations were "of a nature that would be readily apparent upon the record, and therefore, should have been raised on an appeal." SR. 88, 90. Alternatively, the court concluded that the record demonstrated that counsel was not ineffective under either the New York or Federal Constitutions because his "representation did not fall below an objective standard of reasonableness, nor did [petitioner] prove that he was prejudiced by trial counsel's representation." SR. 089.

As stated earlier, a claim of unconstitutionally ineffective assistance of counsel requires the petitioner to show both (1) that counsel's specific "acts or omissions were outside the wide range of professionally competent assistance;" and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 690-94. "This standard applies to claims based on the illness or incapacity of counsel during trial, as well as more traditional ineffective assistance claims." *United States v. Eyman*,

9

313 F.3d 741, 743 (2d Cir. 2002) (citation omitted). "In order to assert a claim based on ineffective assistance due to illness, a defendant must point to *specific* errors or omissions in his courtroom behavior and conduct at trial that were a product of the attorney's illness." *Eyman*, 313 F.3d at 743 (citation omitted, emphasis in original). Moreover, "given the varying effects health problems can have on an individual's ability to function, claims of ineffective assistance based on attorney illness are best suited to the fact-specific prejudice inquiry mandated by *Strickland*." *Bellamy v. Cogdell*, 974 F.2d 302, 308 (2d Cir. 1992).

Petitioner's claim that trial counsel "mix[ed] up dates and times," cannot entitle him to relief. (*See* Dkt. #1 at 6) Petitioner does not specify which dates and times counsel forgot,[3] nor does he claim prejudice as a result of counsel's alleged confusion. This claim therefore does not warrant habeas relief. *See Aronshtein v. United States*, No. 11 CRIM. 121, 2019 WL 6648256, at *8 (S.D.N.Y. Apr. 22, 2019) ("Because Petitioner has not pointed to 'specific errors or omissions' in defense counsel's performance and has not provided any evidence, other than his own conclusory assertions, that defense counsel's performance fell 'below an objective standard of reasonableness,' [counsel's] alleged illness cannot form the basis of an ineffective assistance claim.") (citing *Eyman*, 313 F.3d at 743). Moreover, as observed in *Lopez v. Artus*, No. 03 CIV. 7087, 2005 WL 957341, at *7 (S.D.N.Y. Apr. 25, 2005),

---

[3] In his reply memorandum, Petitioner cites to sections of the trial transcript in which counsel is alleged to have incorrectly referred to the date of the shooting as July 3, 2008, during his cross-examination of the victim. (*See* Dkt. #14 at 11) The Court reviewed the trial transcript and was unable to locate any reference to July 3, 2008. Further, to the extent that Petitioner's reply papers assert new, unexhausted, claims, the Court declines to consider them. *See Spirles v. Kaplan*, No. 16-CV-1044, 2020 WL 210093, at *10 (W.D.N.Y. Jan. 14, 2020).

"although occasionally acknowledging that an attorney's mental impairment may compromise his trial representation in ways that are not readily apparent to the trial judge, courts have generally declined to adopt a *per se* rule for mentally impaired defense counsel." *Id.* (collecting cases holding that mental illness, age, or infirmity did not constitute ineffective assistance where actual prejudice was not shown).

Petitioner also claimed in his state § 440.10 motion that counsel objected "too late" to the victim's use of Petitioner's name without a proper foundation. SR. 009 (citing TT. 207-08). Assuming Petitioner's contention to be true, counsel's decisions as to when to make objections can be attributed to sound trial strategy. *See United Slates v. Luciano*, 158 F.3d 655, 660 (2d Cir.1998) ( "[T]he conduct of examination and cross-examination is entrusted to the judgment of the lawyer, and an appellate court on a cold record should not second-guess such decisions unless there is no strategic or tactical justification for the course taken."); *see also Neil v. Walsh*, No. 07–CV–6685, 2009 WL 382637, at *22 (S.D.N.Y. Feb.17, 2009) ("The decision to withhold objections during direct testimony in order to attack a witness on cross-examination is a sound trial strategy which should not be second-guessed at this stage."). Moreover, any failure to make a meritorious objection does not constitute ineffective assistance where there the failure to object did not result in prejudice. *See Lockhart v. Fretwell*, 506 U.S. 364, 366, (1993) ("Because the result of the . . . proceeding . . . was rendered neither unreliable nor fundamentally unfair as a result of counsel's failure to make [an] objection," petitioner did not demonstrate prejudice under *Strickland*). Petitioner does not allege, much less establish, how he was prejudiced by the belated objection.

11

Finally, a review of the transcripts of proceedings indicate that counsel was an effective and zealous advocate for Petitioner. His cross-examination of the eyewitnesses was thorough and rigorous, and he repeatedly emphasized the victim's failed identifications and contradictions in the witnesses' testimony. *See* TT. 229-33, 237-39, 246-47, 289-90, 312-17. Counsel also presented multiple defense witnesses as connecting elements of an alibi defense, purporting to account for Petitioner's movements from the morning of the day of the shooting until the shooting was reported on the evening news. TT. 329-448.

During sentencing, Petitioner maintained his innocence. In addressing the trial court, he stated, "Really, I think there should have been - - I really don't think that - - that my trial went the way it should have. It should have had maybe better understanding jurors, but it is what it is I guess." ST. 9-10. Notably, he did not complain of his attorney's handling of the trial. Nonetheless, the trial court explained:

> You continue to deny that you are involved in this shooting whatsoever. You are not the first person I am sending off to state prison who's denied what they are charged with or what they were convicted of. *Your attorney did an excellent job for you.* You put on an alibi defense, you testified on your own behalf, and the jury didn't believe you. I didn't believe you either. Your alibi fell all apart when there was just too many things, coincidences, I guess you call them, that everything pointed towards you . . . .

ST. 10 (emphasis added). Thus, Petitioner's claim also fails because an overall review of counsel's work shows that he received constitutionally effective representation under *Strickland*. *See Kimbrough v. Bradt*, 949 F. Supp. 2d 341, 358 (N.D.N.Y. 2013) ("While it is apparent that petitioner is now unsatisfied with the result, counsel's overall

12

performance evidences that his representation was effective.") (citing *Jeremiah v. Artuz*, 181 F.Supp.2d 194, 203–04 (E.D.N.Y.2002) (rejecting ineffectiveness claim in light of counsel's overall performance).

For these reasons, the § 440.10 court's determination was not contrary to clearly established Supreme Court precedent, and the Court recommends that this claim be dismissed.

## B.    Unduly Suggestive Identification Procedures

Petitioner next claims that a witness' pre-trial identification was unduly suggestive because her viewing of two photo arrays containing his enlarged photo tainted her identification at a subsequent lineup.  (Dkt. #1 at 16-22) He raised this claim on direct appeal to the Appellate Division, Fourth Department, which rejected his contention.

> The . . . witness made a positive identification of defendant from a photo array and again in a lineup procedure conducted 53 days later. Contrary to defendant's contention, the fact that he was photographed from a closer range did not impermissibly draw attention to his photograph in the array . . . . In addition, the court properly declined to suppress the lineup identification on the ground that it was influenced by the suggestiveness of the photo array procedure. We conclude that the passage of time between the photographic array and the lineup procedure was sufficient to dissipate any taint of suggestiveness.

*Brown*, 125 A.D.3d at 1550 (citations omitted).

The Fourteenth Amendment guarantees criminal defendants the right to be free from pretrial identification procedures "that are so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384 (1968). Nevertheless, even if a pretrial identification procedure was unduly suggestive, a witness may identify the defendant in court if the in-court identification is independently reliable. *See United States v. Tortora*, 30 F.3d 334, 338 (2d Cir. 1994). Factors used to determine independent reliability include "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of [the witness'] prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation." *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977)

Petitioner claims that the photo arrays shown to the witness were unduly suggestive because his photograph was taken from a closer range and therefore made his face appear larger than the surrounding images. (Dkt. #1 at 7)

"In evaluating whether or not a photographic array was unduly suggestive, a court must consider several factors, including the size of the array, the manner of presentation by the officers, and the contents of the array." *United States v. Thai*, 29 F.3d 785, 808 (2d Cir.) (citations omitted), *cert. denied*, 513 U.S. 977 (1994). "If there is nothing inherently prejudicial about the presentation, such as use of a very small number of photographs, or the utterance of suggestive comments before an identification is made, the 'principal question is whether the picture of the accused,

14

matching descriptions given by the witness, so stood out from all of the other photographs as to suggest to an identifying witness that [that person] was more likely to be the culprit.'" *Id.* (quoting *Jarrett v. Headley*, 802 F.2d 34, 41 (2d Cir. 1986) (in turn quoting *United States v. Archibald*, 734 F.2d 938, 940 (2d Cir. 1984)); internal citations omitted).

The Court has reviewed the photo arrays at issue. SR. 040-42. The arrays depict six males, all of similar race, age, facial hair, and complexion. However, Petitioner's profile is framed slightly larger within the array window. This alone is not sufficient to establish impermissible suggestiveness as his photograph did not stand out among the others "as to suggest to [the] identifying witness[es] that [he] was more likely to be the culprit." *Thai*, 29 F.3d at 808 (internal quotations omitted); *see also, e.g., Knight v. Walsh*, 524 F.Supp.2d 255, 279–280 (W.D.N.Y. 2007) (rejecting argument that photo array was impermissibly suggestive where petitioner was depicted with "a larger head than the other individuals"); *United States v. Bautista*, 23 F.3d 726, 731 (2d Cir. 1994) (photographic array was not impermissibly suggestive despite fact that defendant's photograph was slightly brighter and more close-up than the others); *United States v. Swain*, No. S4 08 CR. 1175, 2011 WL 4348142, at *6 (S.D.N.Y. Aug. 16, 2011) ("Although Defendant's photo is zoomed in so that his head appears slightly bigger than the other subjects' heads, the difference is not so appreciable as to be unduly suggestive.").

Thus, the Court finds that when viewing the array as a whole, Petitioner's photograph was not so different as to suggest his culpability.  Accordingly, the Court need not determine whether the identification was reliable, as the state courts' treatment of the photo array in this case does not represent an objectively unreasonable application of Supreme Court law.

Similarly, the state courts properly rejected Petitioner's claim that the police acted improperly by exposing the witness to "multiple viewings of [his] photograph[.]" (Dkt. #1 at 7)

"[T]he law is clear that the police may use more than one identification procedure to identify suspects as long as the procedures utilized are fair and not suggestive," *Taylor v. Kuhlmann*, 36 F.Supp.2d 534, 551 (E.D.N.Y. 1999) (citation omitted), and a suspect's inclusion in two photo arrays is not *per se* constitutionally impermissible. *See Wager v. Ercole*, No. 06 CIV 0814, 2009 WL 6443854, at *10 (S.D.N.Y. June 12, 2009), *report and recommendation adopted*, No. 06 CV 0814, 2010 WL 1904329 (S.D.N.Y. May 10, 2010) (collecting cases); *see also Ragunauth v. Ercole*, 07 CV 1692, 2008 WL 5401586, at *9 (E.D.N.Y. Dec. 23, 2008) (finding "the witness viewing petitioner two times in a photo array did not taint the subsequent lineup").

Even assuming the procedure was suggestive, which the Court does not find, any taint from the photo arrays was cured when the witness picked Petitioner out of

16

a lineup nearly two months later.  *See, e.g.*, *Reily v. Ercole*, No. 06-CV-5402, 2010 WL 4941469, at *10 (E.D.N.Y. Nov. 30, 2010), *aff'd*, 491 Fed. Appx. 225 (2d Cir. 2012) (any taint flowing from intervening first identification was erased by nine-month gap between first and last lineups); *Gilbert v. Sup't of Collins Corr. Facility*, No. 03 CIV.3866, 2004 WL 287683, at *11 (S.D.N.Y. Feb. 11, 2004); (a period of approximately three months between photo arrays did not taint witness' subsequent lineup and in-court identifications); *Butts v. Walker*, No. 01 CV 5914, 2003 WL 22670921, at *5 (E.D.N.Y. Nov. 6, 2003) (agreeing with state court's conclusion that "any suggestiveness in the photo array was rendered harmless by the fact that [the witness] picked [Petitioner] out of lineup six weeks later."); *Simmonds v. Kuhlman*, No. CV97-7539, 2000 WL 1833722, at *5 (E.D.N.Y. Dec. 7, 2000) ("In any event, a twenty month interval passed between the photographic procedure and the lineup identification procedure so that any possible taint would likely have been attenuated to such a degree as not to have affected the admissibility of the lineup identification.").

The Court therefore finds that the Appellate Division's determination was not contrary to, nor an unreasonable application of Supreme Court precedent, and this claim should be denied.

### C.    Remaining Contentions

Petitioner concludes his petition with the following claims: (1) that the trial court failed to follow the "statutorily-mandated procedure" when, in response to a jury request, it permitted the court reporter to read back a portion of the trial testimony; and

(2) the grand jury proceedings were defective because the victim's testimony regarding his name constituted impermissible hearsay. (Dkt. #1 at 7)

With regard to Petitioner's claim of error with respect to New York Crim. Proc. L. § 310.30,[4] such a claim is not cognizable on habeas review. *See Roberts v. Lamanna*, No. 19 CV 880, 2020 WL 5633871, at *6 (E.D.N.Y. Aug. 31, 2020), *report and recommendation adopted*, No. 19CV00880, 2020 WL 5633078 (E.D.N.Y. Sept. 21, 2020) ("Section 310.30 has no corollary under federal law; thus, any alleged error in the trial court's handling of the jury note was solely a violation of state law, not a constitutional violation.") (citing *Cornado v. Bellnier*, No. 10 Civ. 5265, 2012 WL 6644637, at *5–6 (S.D.N.Y. Sept. 20, 2012), *adopted by*, 2012 WL 6681692 (S.D.N.Y. Dec. 21, 2012) ("A claim premised on a violation of New York Criminal Procedure Law Section 310.30 does not allege a violation of a federally protected right.") (citing cases)); *see generally Estelle*, 502 U.S. at 67-68 ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").

---

[4] *See* N.Y. Crim. Proc. L. § 330.10 ("At any time during its deliberation, the jury may request the court for further instruction or information with respect to the law, with respect to the content or substance of any trial evidence, or with respect to any other matter pertinent to the jury's consideration of the case. Upon such a request, the court must direct that the jury be returned to the courtroom and, after notice to both the people and counsel for the defendant, and in the presence of the defendant, must give such requested information or instruction as the court deems proper.")

Likewise, Petitioner's challenge to the grand jury proceedings does not set forth a basis for federal habeas relief. *See Davis v. Mantello*, 42 Fed. Appx. 488, 490 (2d Cir. 2002) ("Claims of deficiencies in state grand jury proceedings are not cognizable in a habeas corpus proceeding in federal court."). In any event, any error that may have occurred before the grand jury was cured upon his conviction by the petit jury. *See Acevedo v. Sup't*, No. 916CV0594, 2018 WL 1326080, at *6 (N.D.N.Y. Feb. 16, 2018), *report and recommendation adopted*, No. 916CV0594, 2018 WL 1319017 (N.D.N.Y. Mar. 13, 2018) ("[E]ven if the defective grand jury proceedings claim was cognizable on federal habeas review, it is foreclosed as a result of petitioner's jury conviction. It is well-established that any claim of a defect in an indictment is cured by a jury's verdict of guilt beyond a reasonable doubt, based upon the premise that the conviction establishes probable cause to indict and also proof of guilt beyond a reasonable doubt.").

The Court therefore recommends that these claims be dismissed.

## Conclusion

For the reasons explained above, it is ordered that Petitioner's motion for discovery/to expand the record (Dkt. #10) is DENIED. Further, it is recommended that Plaintiff's application for writ of habeas corpus be DENIED and the petition (Dkt. #1) be DISMISSED.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ORDERED, that this Order and Report and Recommendation be filed with the Clerk of the Court.

ANY OBJECTIONS to the Report and Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed. R. Civ. Proc. 72(b) and Local Rule 72(b).

The District Court ordinarily will refuse to consider on *de novo* review arguments, case law and evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. *See, e.g., Patterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co*., 840 F.2d 985, 990-91 (1st Cir. 1988).

Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek v. Canadair Ltd*., 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  Failure to

20

comply with the provisions of Rule 72(b) may result in the District Court's refusal to consider the objection.

Let the Clerk of Court send a copy of this Order and Report and Recommendation to the parties.

**SO ORDERED.**

DATED:     Buffalo, New York
           October 27, 2020

                                    _*s/ H. Kenneth Schroeder, Jr.*_
                                    **H. KENNETH SCHROEDER, JR.**
                                    **United States Magistrate Judge**