UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————————

TAYE M. BROWN,

             Petitioner,

     v.                                    17-CV-213-LJV-HKS
                                                DECISION & ORDER
M. SHEEHAN,

             Respondent.

———————————————————————

On March 8, 2017, the *pro se* petitioner, Taye M. Brown, submitted a petition for

a writ of habeas corpus under 28 U.S.C. § 2254. Docket Item 1. Brown claims that his

conviction in Monroe County Court was unlawfully obtained because (1) he was denied

effective assistance of counsel at trial; (2) the identification procedures used before trial

were unduly suggestive; (3) the trial court failed to follow statutory procedures when

responding to jury questions; and (4) his due process rights were violated by the

introduction of hearsay during the grand jury proceedings. *Id.* at 6-7. On July 21,

2017, the respondent answered the petition, Docket Item 6, and on September 1, 2017,

Brown replied, Docket Item 14. In the meantime, on July 26, 2017, Brown filed a motion

seeking discovery of records related to his trial counsel's health and disciplinary issues,

as well as records from a private investigator who purportedly worked on Brown's case.

Docket Item 10.

On June 17, 2019, this Court referred the case to United States Magistrate Judge

H. Kenneth Schroeder, Jr., for all proceedings under 28 U.S.C. § 636(b)(1)(A) and (B).

Docket Item 18. On October 27, 2020, Judge Schroeder issued a Decision and Order

and Report and Recommendation (collectively, "RR&O") denying Brown's motion for discovery and recommending that his petition be dismissed.  Docket Item 20.  After requesting two extensions of time, *see* Docket Items 22 and 24, Brown filed his objections to the RR&O on March 1, 2021, *see* Docket Item 26.  The respondent did not respond to the objections, and the time to do so now has expired.  *See* Docket Item 27.

A district court may accept, reject, or modify the findings or recommendations of a magistrate judge.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).  The court must review *de novo* those portions of a magistrate judge's recommendation to which a party objects.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).[1]

This Court has carefully and thoroughly reviewed the RR&O; the record in this case; the objections; and the materials submitted to Judge Schroeder.  Based on that *de novo* review, the Court accepts and adopts Judge Schroeder's recommendation to dismiss the petition.[2]  This Court also affirms Judge Schroeder's decision denying Brown's request for discovery.

---

[1] Brown's objections do not include any citations to the RR&O; instead, Brown largely recites arguments raised in his petition and reply.  *See* Docket Item 26.  For that reason, this Court need not engage in *de novo* review of the entire RR&O.  *See Molefe v. KLM Royal Dutch Airlines*, 602 F. Supp. 2d 485, 487 (S.D.N.Y. 2009) ("When a party makes only conclusory or general objections, or simply reiterates the original arguments, the Court will review the [report and recommendation] strictly for clear error.  Similarly, objections that are merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original papers will not suffice to invoke *de novo* review." (alterations, citations, and internal quotation marks omitted)).  Nevertheless, because Brown is proceeding *pro se*, this Court liberally construes his objections to include each of the findings in the RR&O and reviews all findings in Judge Schroeder's recommendation *de novo*.  *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (submissions of *pro se* litigants must be read liberally and interpreted to raise the strongest arguments that they suggest).

[2] The Court assumes the reader's familiarity with the facts alleged in the petition and reply, *see* Docket Item 1; Docket Item 14, and with Judge Schroeder's analysis in

**FACTUAL BACKGROUND**

On October 14, 2008, a Monroe County grand jury indicted Brown for first-degree assault under New York Penal Law § 120.10.  Docket Item 6-2 at 145.[3]  That charge stemmed from a July 23, 2008 shooting at 299 Adams Street in Rochester, New York, which left one woman with severe, permanent injuries in her leg and hand.  *See* Docket Item 6-3 at 271-89.

Before Brown was indicted, Rochester police officers conducted multiple photographic and lineup identifications with an eyewitness and the shooting victim.  *See* Docket Item 6-2 at 165-68.  Niasia Bryant, an eyewitness to the shooting, tentatively picked Brown out of a black-and-white photographic array on the night of the shooting but cautioned that she was not sure of her identification.[4]  Docket Item 6-3 at 27-28, 385-87; Docket Item 6-2 at 132, 165.  About two weeks later, Bryant chose a color version of that photograph of Brown from a second array of color photographs.  Docket Item 6-3 at 14-16, 387; Docket Item 6-2 at 127, 166.  In each array, Brown's close-up image appeared slightly larger than those of the other five men pictured.  *See* Docket

---

the RR&O, *see* Docket Item 20.  Accordingly, the Court provides only a brief recitation of those facts necessary to explain its decision.

[3] Page references are to those generated by the Court's Case Management and Electronic Case Filing System (CM/ECF).

[4] Bryant apparently viewed another array with Brown's photograph on the night of the shooting but did not identify him.  *See* Docket Item 6-2 at 44, 59.  Brown's picture in that array was not the same enlarged photograph that Brown challenged before trial and on direct appeal.  *Id.* at 44.  The trial court did not evaluate the effect of this array in rejecting Brown's motion to suppress, *see id.* at 165, and appellate counsel did not refer to it on appeal, *see id.* at 103.  Brown does not challenge any effect from this array in his petition.  *See* Docket Item 1 at 7.

Item 6-2 at 127, 132.  About eight weeks after Bryant identified Brown in the second

array, Bryant picked Brown out of a lineup at the Monroe County Jail.  Docket Item 6-3

at 34-39, 373-74.

A Rochester police officer also showed two photographic arrays to Jahaidia

Core, the shooting victim, on the night of the shooting.  *See* Docket Item 6-2 at 166;

Docket Item 6-3 at 45-48, 301-03.  One array included the larger photograph of Brown;

the other included a different, smaller photograph.  Docket Item 6-2 at 129-30.  Core did

not pick Brown's photograph out of either array; instead, she stated that another

individual in one array looked like the person who shot her.  *Id.*; Docket Item 6-3 at 301-

03.  About two weeks later, on the same date that Bryant identified Brown from the

second array, Core apparently viewed another photographic array but again did not

identify Brown.[5]  Docket Item 6-2 at 167; Docket Item 6-3 at 51-52.  At a lineup

conducted at the Monroe County Jail on August 8, 2008, however, Core identified

Brown.  *See* Docket Item 6-2 at 167; Docket Item 6-3 at 29-32.

Before trial, Brown moved to suppress the pre-trial identifications of Core and

Bryant.  Docket Item 6-2 at 155-56.  The trial court denied that motion in a February 2,

2009 opinion, concluding that the photographic arrays and lineup procedures used were

not "unduly suggestive" and that any potentially suggestive photographic arrays did not

taint Bryant's or Core's lineup identifications.  *See id.* at 165-71.  The trial court

---

[5] In their briefs to the state appellate court, Brown's appellate counsel and the government represented that Core may not have viewed the third photographic array. *See* Docket Item 6-2 at 109, 193.  In rejecting Brown's motion to suppress Core's identification testimony, however, the trial court determined that Core viewed the third array, *see id.* at 167, and Core testified at trial that she viewed a photographic array on the same day as Bryant, *see* Docket Item 6-3 at 305-08.

therefore concluded that the state could "offer evidence of the [] lineups, as well as in[-]court identifications of [Brown] by the witnesses who viewed [him] in those lineups." *Id.* at 171.

Brown's trial began a week later.  Docket Item 6-3 at 74.  At trial, the prosecution offered both Bryant's and Core's out-of-court lineup identifications and in-court identifications of Brown.  *Id.* at 285-86, 373-75.  After a five-day trial, Brown was convicted of the single count against him.  *Id.* at 642.  On March 11, 2009, Brown was sentenced to a determinate sentence of sixteen years' imprisonment with five years of post-release supervision.[6]  *Id.* at 646-58.

Brown appealed, but his appeal was dismissed in February 2011 when it was not perfected by the required deadline.  Docket Item 6-2 at 231.  After his appeal was reinstated, Brown filed a brief arguing that the trial court erred in denying his motion to suppress the identification testimony and in failing to adhere to New York Criminal Procedure Law ("CPL") § 310.30 when responding to a jury note.  *Id.* at 93-125.

On February 13, 2015, the New York State Supreme Court, Appellate Division, Fourth Department, affirmed Brown's conviction.  *People v. Brown*, 125 A.D.3d 1550, 4 N.Y.S.3d 453 (4th Dep't 2015).  The court first "reject[ed] [Brown's] contention that [the Monroe] County Court erred in denying his motion seeking to suppress the identification testimony of two witnesses on the ground that the photo array used in the pretrial identification procedures was unduly suggestive."  *Id.* at 1550, 4 N.Y.S.3d at 454.  The Appellate Division concluded that the trial court "properly declined to suppress [Bryant's

---

[6] Brown also was sentenced on a violation of probation; that sentence ran concurrently with his sixteen-year sentence on the assault charge.  Docket Item 6-3 at 657.

lineup identification," finding that the photographs were not unduly suggestive and that "the passage of time between the photographic array and the lineup procedure was sufficient to dissipate any taint of suggestiveness." *Id.* The court also "note[d] that [Core] did not make a positive identification of [Brown] from any photo array at any time." *Id.* The Appellate Division then rejected Brown's challenge to the trial court's handling of the jury note, finding that "the court fulfilled its 'core responsibilities under CPL [§] 310.30.'" *Id.* at 1551, 4 N.Y.S.3d at 454 (quoting *People v. Tabb*, 13 N.Y.3d 852, 853, 920 N.E.2d 90, 90 (2009)).

Brown sought leave to appeal that decision to the New York Court of Appeals on March 3, 2015. *See* Docket Item 6-2 at 207-11. About one year later, the Court of Appeals denied Brown's request. *See People v. Brown*, 27 N.Y.3d 993, 59 N.E.3d 1215 (2016).

Brown also challenged his conviction in a collateral proceeding brought in Monroe County Court under CPL § 440.10. *See* Docket Item 6-2 at 3-76. On June 13, 2013, the court dismissed Brown's motion, finding that his ineffective assistance of counsel claim was meritless and that his remaining arguments were "of a nature that would be readily apparent upon the record[] and therefore[] should have been raised on an appeal." Docket Item 6-2 at 89-92. Brown apparently did not appeal or seek leave to appeal that decision.

## DISCUSSION

## I.   BROWN'S DISCOVERY REQUEST

In his objections, Brown states that he is "ready . . . to argue discovery and why [he] should [] get it," and he reiterates that he "wish[es] to find the identity of the private

6

investigator" who he claims was paid to "investigat[e] fact[s] that [were] very important" and which "could have change[d] the outcome of th[e] case." Docket Item 26 at 2-3. This Court liberally construes that argument as an objection to Judge Schroeder's order denying discovery. *See Triestman*, 470 F.3d at 474.

Under Rule 72(a) of the Federal Rules of Civil Procedure, when a party timely objects to a magistrate judge's decision on a non-dispositive matter, "the district judge in the case must . . . modify or set aside any part of the order that is clearly erroneous or is contrary to law." *Id.*; *see also* 28 U.S.C. § 636(b)(1)(A). "Matters concerning discovery generally are considered 'non[-]dispositive' of the litigation." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 116 (2d Cir. 2010) (quoting *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990)). "[A] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. Bessemer City*, 470 U.S. 564, 573 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). This standard "does not entitle a reviewing court to reverse . . . simply because it is convinced that it would have decided the case differently." *Id.* An order is contrary to law "when it fails to apply or misapplies relevant statutes, case law[,] or rules of procedure." *Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 206 F.R.D. 78, 86 (S.D.N.Y. 2002) (citation omitted).

As Judge Schroeder noted, habeas petitioners are "not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997). Instead, under Rule 6(a) of the Rules Governing Section 2254 Cases in the Federal District Courts, "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal

Rules of Civil Procedure and may limit the extent of discovery."  Good cause exists

"where specific allegations before the court show reason to believe that the petitioner

may, if the facts are fully developed, be able to demonstrate that he is entitled to relief."

*Bracy*, 520 U.S. at 908-09 (alteration omitted) (quoting *Harris v. Nelson*, 394 U.S. 286,

300 (1969)).  "A petitioner bears a heavy burden in establishing a right to discovery,"

and "[g]eneralized statements are not sufficient to establish the requisite 'good cause.'"

*Edward v. Superintendent, Southport C.F.*, 991 F. Supp. 2d 348, 364 (E.D.N.Y. 2013).

Brown requests documents related to his trial counsel's purported suspension

from the practice of law and records related to a private investigator who "never

investigated anything dealing with [his] case."  Docket Item 10 at 1.  It is not clear from

Brown's motion that such records exist, much less that they contain material relevant to

his claims.  As Judge Schroeder correctly concluded, Brown's speculative and

conclusory requests therefore do not satisfy the "heavy burden" to obtain discovery.

*See Johnson v. Conway*, 2010 WL 681259, at *2 (W.D.N.Y. Feb. 22, 2010)

("Generalized statements about the possible existence of discovery material are

insufficient to constitute good cause." (citation and internal quotation marks omitted)).

Likewise, Judge Schroeder correctly denied Brown's request for his attorney's

"medical records and his death certificate."  Docket Item 10 at 1.  As set forth below,

"claims of ineffective assistance based on attorney illness are best suited to the fact-

specific prejudice inquiry mandated by *Strickland*."  *Bellamy v. Cogdell*, 974 F.2d 302,

308 (2d Cir. 1992).  So even if, as Brown says, the records he now seeks will show that

his attorney "pass[ed] away from and was suffering from esoph[ageal] cancer" and

therefore had a diminished "mental health ability" at trial, Docket Item 10 at 1, Brown

has not demonstrated how these medical records "would enable him to identify any other 'specific errors and omissions' in [his counsel's] performance or provide additional evidence that [he] was prejudiced," *Mazer v. United States*, 2018 WL 7080450, at *4 (S.D.N.Y. Dec. 20, 2018) (quoting *United States v. Eyman*, 313 F.3d 741, 743 (2d Cir. 2002)).

Because Brown has not surmounted the steep barrier to demonstrate "good cause" for discovery or to show that Judge Schroeder's decision was clearly erroneous or contrary to law, this Court will not revisit that decision.

## II.    BROWN'S HABEAS CLAIMS[7]

### A.    Ineffective Assistance of Counsel

Brown argues that he was denied effective assistance of counsel because his trial attorney "was suffering from a serious illness which . . . cause[d] him to mix up date[s] and time[s]."  Docket Item 1 at 6.  To be entitled to relief based on the ineffective assistance of counsel, a petitioner must "(1) demonstrate that his counsel's performance 'fell below an objective standard of reasonableness' in light of 'prevailing professional norms'; and (2) 'affirmatively prove prejudice' arising from counsel's allegedly deficient representation."  *United States v. Cohen*, 427 F.3d 164, 167 (2d Cir.

---

[7] Brown first "object[s] to the [respondent's] motion because there are [some things] that are made up [in it]."  Docket Item 26 at 1.  Apparently, Brown takes issue with certain statements in the respondent's submission to Judge Schroeder that children were playing on the porch of 299 Adams Street when Brown fired at the house.  *See id.* Although the respondent and Judge Schroeder briefly referred to the presence of children on the porch of 299 Adams Street, *see, e.g.*, Docket Item 6 at 4, Docket Item 20 at 2, nothing in the RR&O—and none of the claims in Brown's petition—turn on whether any children were indeed there.  In other words, that objection lacks merit because the issue it raises is largely irrelevant.

2005) (citations omitted) (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 693 (1984)).  Under the first prong, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Strickland*, 466 U.S. at 689.  Under the second prong, the petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  If counsel's conduct was not deficient, the court need not reach the issue of prejudice.  *Id.* at 697.

"[W]hile in some instances 'even an isolated error' can support an ineffective-assistance claim if it is 'sufficiently egregious and prejudicial,' it is difficult to establish ineffective assistance when counsel's overall performance indicates active and capable advocacy."  *Harrington v. Richter*, 562 U.S. 86, 111 (2011) (quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).  And as for claims that an attorney's illness rendered his or her assistance ineffective, "there is [] nothing inherent in an attorney's illness that necessarily will impede a spirited defense . . . to justify finding the attorney's representation *per se* ineffective."  *Bellamy*, 974 F.2d at 308.  Instead, "claims of ineffective assistance based on attorney illness are best suited to the fact-specific prejudice inquiry mandated by *Strickland*."  *Id.*

*Strickland* is deferential to a lawyer's trial strategy; likewise, under section 2254(d)(1), federal courts are deferential to state courts' application of *Strickland*. Under 28 U.S.C. § 2254(d)(1), a federal court "shall not" grant a state prisoner's habeas petition based on a claim adjudicated on the merits in state court "unless the adjudication of the claim . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established [f]ederal law, as determined by the

Supreme Court of the United States."  A state court's decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or if the state court decides a case with facts "materially indistinguishable from a relevant Supreme Court precedent" and reaches the opposite result.  *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  A state court's decision is an "unreasonable application" of clearly established federal law when the state court identifies the correct legal principle "but unreasonably applies that principle to the facts of the [] case."  *Id.* at 413.

Here, the Monroe County Court that decided Brown's motion under CPL § 440.10 identified the *Strickland* standard and rejected Brown's ineffective assistance claim on the merits.  The question for this Court therefore is "not whether the state court was incorrect or erroneous in rejecting [the petitioner's] ineffective assistance of counsel claim, but whether it was 'objectively unreasonable' in doing so."  *Sellan v. Kuhlman*, 261 F.3d 303, 315 (2d Cir. 2001).  So long as "'fair[-]minded jurists could disagree' on the correctness of the state court's decision," this Court must deny habeas relief.  *See Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Brown specifically asserts that his trial counsel was ineffective because he was "suffering from esophag[eal] cancer," which "cause[d] him to mix up date[s] and time[s]."  Docket Item 1 at 6.  Brown's failure to pursue an appeal of the decision denying his § 440.10 motion renders this claim unexhausted and therefore procedurally barred.  *See Safran v. Dep't of Corr. & Cmty. Supervision*, 2014 WL 1757516, at *8 (E.D.N.Y. Apr. 30, 2014).  But even if that were not true, his ineffective assistance claim would fail

regardless. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

At trial, Brown's counsel appears to have mistakenly referred to certain dates on several occasions. In particular, trial counsel referred to a photographic array shown to Core and Bryant on August 8, 2008, *see, e.g.*, Docket Item 6-3 at 304-08, 389, when that array apparently was shown on August 6—two days earlier, *see id.* at 50. Trial counsel referred to the "August 8" array during his questioning of Core and Bryant, *see id.* at 304-08, 389, and he later repeated that date during his closing argument, *see id.* at 581. Brown's counsel also erroneously stated that Core viewed a photographic array on "August 23rd" rather than July 23. *Id.* at 313.[8]

Those slips of the tongue could have happened to even the most skilled trial lawyer. But even if the errant references were due to trial counsel's illness, Brown has not demonstrated that they were "errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Strickland*, 466 U.S. at 687. And it is difficult to fathom how the errors made any difference at all. In fact, trial counsel's errors seem to have been nothing more than ordinary lapses: On redirect questioning of Core and Bryant, the prosecutor likewise referred to a photographic array shown on August 8, not August 6. *See* Docket Item 603 at 320, 393-94.

---

[8] In his reply, Brown also contends that trial counsel asked Core whether she was shot on July 3. Docket Item 14 at 11. This Court, like Judge Schroeder, has reviewed the transcript of Core's testimony and cannot find any reference to July 3. Instead, in the section that Brown apparently references in his reply, *see id.*, trial counsel asked Core whether she was "shot on the 23rd of July, correct?" Docket Item 6-3 at 308. Regardless, even if counsel misspoke, that error would not have been significant.

In any event, under *Strickland*'s prejudice prong, "[t]he likelihood of a different result must be substantial, not just conceivable."  *Harrington*, 562 U.S. at 112 (citing *Strickland*, 466 U.S. at 693).  Brown does not claim that a different result was conceivably likely, much less substantially so, had trial counsel referred to the correct dates.  Nor were those dates themselves integral to the defense case.  While trial counsel thoroughly questioned Bryant and Core on their identifications of Brown, *see, e.g.*, Docket Item 6-3 at 299-309, 311-13, 384-90, counsel's central argument was an alibi defense that put Brown somewhere other than at 299 Adams Street when the shooting occurred.  *See id.* at 429-30, 533-34.  So although Brown's trial counsel may have mistakenly referred to the date when Brown was identified, there is no "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694; *cf. Bryant v. New York State*, 2009 WL 5253167, at *5 (S.D.N.Y. Dec. 29, 2009) ("By referring to [the p]etitioner as [his] co-defendant on several occasions, trial counsel did not commit 'errors so serious as to be objectively unreasonable'; nor is there any reasonable probability that the result of the proceeding would have been different but for the misstatements." (internal quotation marks omitted) (citing *Strickland*, 466 U.S. at 687-88, 694)).

The 440.10 court therefore was not objectively unreasonable in denying Brown's ineffective assistance of counsel claim.  *See Gillespie v. Uhler*, 652 F. App'x 61, 63-64 (2d Cir. 2016) (summary order) (concluding that state court decision rejecting ineffective assistance claim was not "error beyond any possibility for fair[-]minded disagreement" even where defense counsel's misstatements "were material and arguably inculpatory"

(alterations and citation omitted)).  On the contrary, this Court agrees with the state

court's conclusion on this score.[9]

### B.   Unduly Suggestive Identification Procedures

Brown also claims that "[u]nduly suggestive identification procedures [were]

employed" prior to trial.[10]  Docket Item 1 at 7.  The Appellate Division rejected this

argument on the merits in Brown's direct appeal.[11]  *See Brown*, 125 A.D.3d at 1550, 4

N.Y.S.3d at 454.  Therefore, Brown "must show that the [Appellate Division's] ruling on

the claim . . . was so lacking in justification that there was an error well understood and

---

[9] In his objections, Brown also claims that his attorney was ineffective for other reasons, including his failure to call additional alibi witnesses.  Docket Item 26 at 1. Judge Schroeder did not consider this argument, which was raised for the first time in Brown's reply and was never adjudicated in state court.  *See* Docket Item 20 at 10 n.3. Rule 2(c)(1) of the Rules Governing Section 2254 Cases in the Federal District Courts requires a petitioner to "specify all the grounds for relief available" in the petition, and "[a]rguments may not be raised for the first time in a reply brief."  *Alnutt v. United States*, 588 F. App'x 45, 47 (2d Cir. 2014) (summary order) (quoting *United States v. Gigante*, 39 F.3d 42, 50 n.2 (2d Cir. 1994)).  So Judge Schroeder correctly did not consider this claim, and this Court likewise declines to do so now.

[10] The respondent contends that Brown challenged the procedures used only in Bryant's identification.  *See* Docket Item 6 at 22 n.6.  But in his petition, Brown generally argues that "[t]he lower court erred when it denied [his] motion to suppress the witnesses['] identification."  Docket Item 1 at 7.  This Court therefore evaluates Brown's challenges to both Core's and Bryant's identifications.

[11] In rejecting Brown's challenges, the Appellate Division considered whether the identification procedures used were "unduly suggestive" and whether the photographs "impermissibly dr[ew] attention to [Brown's] photograph in the array."  *Brown*, 125 A.D.3d at 1550, 4 N.Y.S.3d at 454.  Because those principles "do not contradict the governing law established in *Simmons*[] or any other principle of federal law clearly established by the Supreme Court," this Court considers whether the Appellate Division's conclusions were unreasonable applications of federal law.  *See Dunlap v. Burge*, 583 F.3d 160, 165 (2d Cir. 2009).

comprehended in existing law beyond any possibility for fair[-]minded disagreement." *Harrington*, 562 U.S. at 103.

As Judge Schroeder noted, the due process clause protects against pretrial "identification procedure[s] [that are] so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 385 (1968). "The fairness of a photographic array depends on a number of factors, including the size of the array, the manner of presentation by the officers, and the array's contents. If there is nothing inherently prejudicial about the presentation, such as use of a very small number of photographs or the use of suggestive comments, the 'principal question is whether the picture of the accused, matching descriptions given by the witness, so stood out from all of the other photographs as to suggest to an identifying witness that that person was more likely to be the culprit.'" *United States v. Concepcion*, 983 F.2d 369, 377 (2d Cir. 1992) (alterations, citations, and internal quotation marks omitted) (quoting *Jarrett v. Headley*, 802 F.2d 34, 41 (2d Cir. 1986)).

Moreover, "[e]ven if the procedure was unnecessarily (or impermissibly) suggestive[] . . . a [] court may still admit the evidence 'if, when viewed in the totality of the circumstances, it possesses sufficient indicia of reliability.'" *United States v. Bautista*, 23 F.3d 726, 729-30 (2d Cir. 1994) (footnote omitted) (quoting *United States v. Simmons*, 923 F.2d 934, 950 (2d Cir. 1991)). "[T]he factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the [suspect] at the time of the crime, the [witness's] degree of attention, the accuracy of the [witness's] prior description of the [suspect], the level of certainty

demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation."  *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972).

### 1.    Bryant's Identification

Brown first challenges the state court's rejection of his claims related to Bryant's identifications.  *See* Docket Item 1 at 7.  The Appellate Division rejected this claim on the merits, concluding that the photographs were not "unduly suggestive" and "did not impermissibly draw attention to [Brown's] photograph" despite "the fact that he was photographed from a closer range."  *Brown*, 125 A.D.3d at 1550, 4 N.Y.S.3d at 454.

This Court has reviewed the photographic arrays that Brown challenged before trial and on appeal.  *See* Docket Item 6-2 at 127, 129-30, 132.  To be sure, in three of those arrays Brown's face appears slightly larger in frame than the faces of other individuals.  *See id.* at 127, 130, 132.  But this Court cannot say that the Appellate Division was objectively unreasonable in concluding that this slight difference did not make the photographs unduly suggestive.  *See Bautista*, 23 F.3d at 731 (rejecting claim that photographic array was unduly suggestive where "the photograph of [the defendant] was brighter and somewhat more close-up than the other five photographs in the array").  Considering the "significant discretion" afforded to a state court in determining whether "pre-trial photographic identification presents a very substantial likelihood of irreparable misidentification," *see Dunlap*, 583 F.3d at 166, this Court will not now revisit the Appellate Division's determination that the enlarged photographs passed constitutional muster.

To the extent that Brown also challenges the multiple identification procedures used with Bryant, the Appellate Division likewise was not objectively unreasonable in

rejecting that claim.[12]  The repeated use of identification procedures has the potential to be unduly suggestive.  *See Young v. Conway*, 698 F.3d 69, 78 (2d Cir. 2012) (noting that "false identification rates increase . . . when there are multiple identification procedures" and warning that this might be the result of "heightened expectations and suggestiveness" (citation omitted)).  At the same time, "[s]uccessive identification procedures are not per se unduly suggestive, even where the accused is the only common denominator among them."  *McKinnon v. Superintendent, Great Meadow Corr. Facility*, 422 F. App'x 69, 74-75 (2d Cir. 2011) (summary order).

Here, Bryant tentatively identified Brown from a photographic array before positively identifying him about two weeks later in a second array and in a lineup. Although the same photograph of Brown appeared in both arrays, "[f]ederal courts have found that 'a suspect's inclusion in two photospreads, even with the same photo, is not constitutionally impermissible.'"  *Lewis v. Graham*, 2018 WL 3819557, at *5 (W.D.N.Y. Aug. 10, 2018) (alterations omitted) (quoting *United States v. Maguire*, 918 F.2d 254, 263 (1st Cir. 1990)).  And while Bryant was not certain about her identification in the first

---

[12] The Appellate Division did not explicitly address Brown's argument that the use of multiple identifications was unduly suggestive; instead, it broadly "reject[ed] [Brown's] contention that [the Monroe] County Court erred in denying his motion seeking to suppress the identification testimony of two witnesses on the ground that the photo array used in the pretrial identification procedures was unduly suggestive."  *Brown*, 125 A.D.3d at 1550, 4 N.Y.S.3d at 454.  But "a state court decision need not mention a particular argument or explain the reasons for rejecting it" to "qualify as an adjudication 'on the merits'" and trigger the deferential standard of review under 28 U.S.C. § 2254(d). *Dallio v. Spitzer*, 343 F.3d 553, 560 (2d Cir. 2003).  Where, as here, the state court rejected Brown's identification argument entirely and "there is no basis either in the history of the case or the opinion of the Appellate Division for believing that [his] claim was denied on procedural or any other non[-]substantive grounds," it is subject to review "under the more deferential standard set forth in § 2254."  *Brown v. Artuz*, 283 F.3d 492, 498 (2d Cir. 2002).

array, that did not make Brown's inclusion in the second array impermissibly suggestive. *See Concepcion*, 983 F.2d at 379 ("[T]he fact that a suspect's picture was placed in a second array after a witness has failed to select anyone from the first array [does not] automatically make the second array unduly suggestive.").

Finally, the Appellate Division's conclusion that "the passage of time between the photographic array and the lineup procedure was sufficient to dissipate any taint of suggestiveness," *Brown*, 125 A.D.3d at 1550, 4 N.Y.S.3d at 454, was not an unreasonable application of federal law.  As Judge Schroeder noted, other federal courts have concluded that a similar gap between the time of an arguably suggestive photographic array and a later lineup identification rendered "any suggestiveness in the photo array . . . harmless."  *See, e.g.*, *Butts v. Walker*, 2003 WL 22670921, at *5 (E.D.N.Y. Nov. 6, 2003) ("agree[ing] with the conclusions of [the state courts]" in determining that passage of time eliminated taint).  So the Appellate Division did not unreasonably conclude that the nearly eight weeks between Bryant's identification in the photographic array and in the lineup eliminated any taint from the allegedly suggestive photographs.[13]

---

[13] Because this Court does not disturb the Appellate Division's finding that the identification procedures were not unduly suggestive, it need not evaluate whether the identifications were sufficiently reliable.  Nevertheless, testimony at trial demonstrated the reliability of Bryant's identification.  Bryant testified that she had an unobstructed view of Brown that afternoon.  Docket Item 6-3 at 370.  Brown was standing "directly across the street from [Bryant]" at the time of the shooting, and Bryant recalled particular observations about Brown's clothing and his actions prior to the shooting. *See id.* at 368-71.  What is more, Bryant did not equivocate at all in her identification of Brown both at the lineup and at trial.  *Id.* at 38, 374-75.

### 2.   Core's Identification

Brown also challenges the identification procedures used with Core.  The

Appellate Division generally "reject[ed] [Brown's] contention that [the Monroe] County

Court erred in denying his motion to suppress the identification testimony of [Core] on

the ground that the photo array used in the pretrial identification procedures was unduly

suggestive."[14]  *Brown*, 125 A.D.3d at 1550, 4 N.Y.S.3d at 454.  That merits-based

determination is subject to deferential review under 28 U.S.C. § 2254(d).  *See Brown*,

283 F.3d at 498; *see also supra* at 17 n.12.

For the reasons noted above, this Court will not revisit the Appellate Division's

conclusion that the photographs in the arrays shown to Bryant were not unduly

suggestive.  The use of those same photographs in the arrays shown to Core does not

warrant a different result.  Nor was the Appellate Division's rejection of Brown's

challenge to the multiple photographic arrays presented to Core "so lacking in

justification that there was an error well understood and comprehended in existing law

beyond any possibility for fair[-]minded disagreement."  *Harrington*, 562 U.S. at 103.  To

be sure, unlike Bryant, Core failed to identify Brown in any photographic array before

identifying him in the lineup on August 8.[15]  But a witness's failure to identify a suspect

in a prior array does not necessarily render a subsequent identification impermissible,

---

[14] The court also observed "that [Core] did not make a positive identification of [Brown] from any photo array at any time."  *Id.*

[15] That includes the array purportedly shown to Core on August 6, 2008.  *See* Docket Item 6-2 at 167.  Although that array included the same photograph of Brown from a previous array, that does not render the array impermissibly suggestive for the reasons set forth above.  *See Lewis*, 2018 WL 3819557, at *5.

*see Concepcion*, 983 F.2d at 379, and there is no reason to apply a different rule to an initial failure in a photographic array and subsequent identification in a lineup.

Because the Appellate Division's decision was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair[-]minded disagreement," *Harrington*, 562 U.S. at 103, this Court rejects Brown's challenge to the identification procedures used with Core and Bryant.[16]

### C.    Violation of New York Criminal Procedure Law § 310.30

Brown also argues that the trial judge and his attorney "violated the[] *O'Rama* law." Docket Item 26 at 1. In *People v. O'Rama*, 78 N.Y.2d 270, 276-78, 579 N.E.2d 189, 192-93 (1991), the New York Court of Appeals set forth the procedures that trial courts must follow to respond to "substantive juror inquir[ies]" under CPL § 310.30. But as Judge Schroeder correctly concluded, Brown's claim that the trial judge and his attorney violated CPL § 310.30 is not cognizable on federal habeas review. Docket Item 20 at 18; *see Cornado v. Bellnier*, 2012 WL 6644637, at *5 (S.D.N.Y. Sept. 20, 2012) (collecting cases) ("A claim premised on a violation of New York Criminal Procedure Law Section 310.30 does not allege a violation of a federally protected right."), *report and recommendation adopted*, 2012 WL 6681692 (S.D.N.Y. Dec. 21, 2012). Because "habeas corpus relief is available in federal court only when an

---

[16] Because the Appellate Division's did not unreasonably conclude that the identification procedures were not suggestive, this Court need not evaluate the reliability of Core's identifications. But Core testified at trial that like Bryant, she saw Brown from across the street and "looked directly at him" after the first shot. Docket Item 6-3 at 275-76, 279. Core also testified about the specific clothing that Brown was wearing. *See id.* at 279. Furthermore, Core did not equivocate when she identified Brown at trial, *see id.* at 286; and at the lineup identification, Core "[i]mmediately" identified Brown as the shooter, *id.* at 30.

individual is incarcerated in violation of a federally protected right," Brown's claim that the trial court and his counsel violated CPL § 310.30—that is, a state law—does not provide a basis for relief in this Court.  *See id.*

### D.    Grand Jury Proceedings

Brown also mentions in passing in his objections that "the hearsay" issue in his case "violated [his] right[] to a fair trial."  Docket Item 26 at 3.  Brown apparently is referring to the argument in his petition that the "grand jury proceedings" in his case "violated due process" because "the alleged victim refer[red] to [him] by name," which was "hearsay and [could not] be use[d]."  Docket Item 1 at 7.  But as Judge Schroeder noted, "challenge[s] to [] grand jury proceedings do[] not set forth a basis for federal habeas relief."  Docket Item 20 at 19 (citing *Davis v. Mantello*, 42 F. App'x 488, 490 (2d. Cir. 2002) (summary order) ("Claims of deficiencies in state grand jury proceedings are not cognizable in a habeas corpus proceeding in federal court.")).  Therefore, even though no state court passed on this claim and it is still unexhausted, *see* Docket Item 1 at 7, this Court nonetheless denies it on the merits, *see* 28 U.S.C. § 2254(b)(2).

### E.    Involvement of the United States Marshals

Finally, Brown asserts in his objections that his due process rights were violated "once the U.S. Marshal[] Chuck Salina invo[lv]ed himself in a case that had nothing to do with him [or] his office."  Docket Item 26 at 1.  Brown's claim apparently hinges on an alleged friendship between witness Bryant and a United States Marshal who purportedly was involved in Brown's case in some way.  *See* Docket Item 14 at 5, 12.

While these allegations were mentioned in passing in Brown's motion under CPL § 440.10, *see, e.g.*, Docket Item 6-2 at 8, no state court ever passed on this claim and it

therefore is unexhausted.  What is more, this claim was not included in Brown's petition; instead, he raised it for the first time in his reply to Judge Schroeder.  Judge Schroeder correctly declined to address any unexhausted claims raised for the first time in Brown's reply, and this Court likewise does not entertain this claim now.[17]

## **CONCLUSION**

For the reasons stated above and in the RR&O, Brown's petition for a writ of habeas corpus, Docket Item 1, is DENIED and the petition is DISMISSED.  Judge Schroeder's order denying discovery is AFFIRMED.  The Clerk of the Court shall close the case.

This Court hereby certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore denies leave to appeal as a poor person.  *Coppedge v. United States,* 369 U.S. 438 (1962).  The Court also certifies under 28 U.S.C. § 2253(c)(2) that because the issues raised here are not the type of issues that a court could resolve in a different manner, and because these issues are not debatable among jurists of reason, the petitioner has failed to make a substantial showing of the denial of a constitutional right.  Accordingly, the Court denies a certificate of appealability.

---

[17] Brown raises a number of other new arguments in his reply, which Judge Schroeder similarly declined to consider.  *See* Docket Item 20 at 10 n.3.  For the reasons stated above, this Court likewise does not consider these arguments.

Brown must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within 30 days of the date of judgment in this action.  Requests to proceed on appeal as a poor person must be filed with the United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

SO ORDERED.

Dated:        December 27, 2021
              Buffalo, New York

_____
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE